# EXHIBIT 1

Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
**MANNING LAW, APC**
26100 Towne Centre Drive
Foothill Ranch, CA 92610
Office: (949) 200-8755
Fax: (866) 843-8308
DisabilityRights@manninglawoffice.com

Attorney for Plaintiff Jennifer Carbine

Electronically FILED by
Superior Court of California,
County of Los Angeles
11/08/2024 4:45 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By W. Noble, Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JENNIFER CARBINE, an individual,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ALDI INC., an Illinois corporation; and DOES 1-10, inclusive,<br><br>　　　　Defendants. | Case No.: 24NWCV04305<br><br>**Complaint For Damages And Injunctive Relief For:**<br><br>　1. **Violations of the Americans with Disabilities Act**<br>　　(42 U.S.C. § 12101, *et seq.*)<br>　2. **Violations of the Unruh Civil Rights Act**<br>　　(Cal. Civil Code § 51, *et seq.*) |

Plaintiff JENNIFER CARBINE ("Plaintiff") alleges the following upon information and belief based upon investigation of counsel, except as to Plaintiff's own acts, which Plaintiff alleges upon personal knowledge:

### **INTRODUCTION**

1.　Plaintiff is a visually-impaired and legally blind person who requires screen-reading software ("SRS") to read website content using a computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others

---
**COMPLAINT**
1

1  have no vision.

2. Plaintiff brings this civil rights action against ALDI INC., an Illinois corporation, ("Defendant") for its failure to design, construct, maintain, and operate its website (hereinafter the "Website" or "Defendant's Website" which shall refer to www.aldi.us, and any other website operated by or controlled by Defendant as well as any third party content which is located on or used in connection with www.aldi.us and any other website operated by or controlled by Defendant, for the purposes described herein) to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people.

3. Defendant's Website denies Plaintiff and other legally blind persons full and equal access to the Website and therefore to its products and services offered thereby and in conjunction with its brick-and-mortar location(s) in violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA") and California's Unruh Civil Rights Act (the "UCRA").

4. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See: 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows: "A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii)."

5. The California Legislature provided a clear and statewide mandate for the elimination of discrimination against individuals with disabilities when it enacted the Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq.* Discrimination sought to be eliminated by the UCRA includes barriers to full integration, independent living, and equal opportunity for individuals with disabilities, which then necessarily includes barriers created by websites and other places of public accommodation that are inaccessible to blind and visually-impaired

**COMPLAINT**
2

individuals.

6. Because Defendant's Website is not equally, independently, or fully accessible to blind and visually-impaired consumers in violation of the ADA and the UCRA, Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers who require the use of SRS to access the Website.

## JURISDICTION AND VENUE

7. Defendant conducted and continues to conduct substantial business in the State of California, County of Los Angeles, and Defendant's offending Website is available throughout California.

8. Defendant conducts substantial business in Los Angeles County.

9. A substantial portion of the conduct complained of herein occurred in this District.

## PARTIES

10. Plaintiff, at all times relevant and as alleged herein, is a resident of California, County of Los Angeles. Plaintiff is legally blind and cannot use a computer without the assistance of SRS. However, Plaintiff is a proficient user of SRS and uses it to access the internet. Plaintiff has visited the Website on separate occasions using SRS. During Plaintiff's separate visits to Defendant's Website, Plaintiff encountered multiple access barriers which denied Plaintiff full and equal access to the facilities, goods, and services offered to the public and made available to the public on Defendant's Website. Due to the widespread access barriers Plaintiff encountered on Defendant's Website, Plaintiff has been deterred obtaining full and equal access to the Website.

11. Plaintiff did not encounter, nor does she in any way base her claims alleged herein, upon the presence of any physical or architectural barrier in any public place of accommodation.

12. Plaintiff wants to avail herself of Defendant's goods and services as offered on Defendant's Website, including the service that is the Website itself.

13. Plaintiff also evaluated the Website for full and equal access to Plaintiff and other legally blind persons.

14. Plaintiff is also a civil rights advocate for the disabled to determine compliance with the ADA.

15. Plaintiff has filed multiple lawsuits against various operators of commercial websites as part of Plaintiffs advocacy work on behalf of the civil rights of visually-impaired persons.

16. Plaintiff intends to continue to engage in such advocacy work into the foreseeable future to ensure that Defendant's commercial Website and others are fully and equally enjoyable to and usable by visually-impaired persons, including herself.

17. Plaintiff is being deterred from patronizing the Defendant's Website and/or brick-and-mortar locations on particular occasions.

18. Plaintiff has standing to sue Defendant under the UCRA. As the California Supreme Court explained in *Angelucci v. Century Supper Club*, 4l Cal.4th 160 (2007),"an individual plaintiff has standing under the [Unruh Civil Rights] Act if he or she has been the victim of the defendant's discriminatory act." *Id.* at l75.

19. Plaintiff is informed and believes, and thereon alleges Defendant is an Illinois corporation, and has its principal place of business in Batavia, IL.

20. Defendant operates brick-and-mortar locations in Los Angeles County, California. Defendant's brick-and-mortar locations constitute places of public accommodation.

21. Defendant's Website provides consumers with access to an array of goods, services, and information related to Defendant's brick-and-mortar locations including product descriptions, online ordering, contact options, location information, career opportunities, pricing details, account sign-up, email sign-up, and/or many other benefits.

22. The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names.

23. Each of the Defendants designated herein as a DOE is legally responsible for

**COMPLAINT**
4

the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

24. At all relevant times as alleged herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants.

25. Each of the acts and/or omissions complained of herein were alleged and made known to, and ratified by, each of the other Defendants (Defendant, together with any DOE Defendants, are collectively referred to hereinafter as "Defendant" or "Defendants").

**VISUALLY-IMPAIRED PERSONS' ACCESS TO THE INTERNET**

26. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

27. As an essential tool for many Americans, when accessible, the Internet provides individuals with disabilities great independence.

28. Blind persons are able to access websites using keyboards in conjunction with SRS that vocalizes the visual information found on a computer screen. This technology is known as screen-reading software.

29. Except for legally blind individuals whose residual vision allows them to use magnification, screen-reading software is currently the only method a blind person can fully and independently access the internet.

30. Blind and visually-impaired users of Windows computers and devices have several screen-reading software programs available to them.

31. Job Access With Speech, otherwise known as "JAWS," is currently the most popular, separately SRS available for Windows.

32. For SRS to function, the information on a website must be capable of being

COMPLAINT
5

rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users using their keyboards because they are unable to see the screen or manipulate a mouse.

33. SRS is currently the only method a blind or visually-impaired person may independently access the internet, websites, and other digital content.

34. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access and navigate the same content on a website or mobile app that is available to sighted users.

35. There are well-established industry adopted guidelines for making websites accessible to visually-impaired people who require screen-reading software programs. These guidelines have existed for at least several years and are successfully followed by large business entities who want to ensure their websites are accessible to all persons.

36. The Web Accessibility Initiative ("WAI"), an initiative of the World Wide Web Consortium developed guidelines on website accessibility.

37. Through Section 508 of the Rehabilitation Act, the federal government also promulgated website accessibility standards. These guidelines, easily found on the Internet, recommend several basic components for making websites accessible, including, but not limited to: adding invisible Alt-text to graphics; ensuring all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible; and adding headings so blind and visually-impaired people can navigate websites and mobile applications just as sighted people do. Without these basic components, websites and mobile applications are inaccessible to a blind person using SRS.

38. Common barriers encountered by blind and visually-impaired persons include, but are not limited to, the following:

    a. A text equivalent for every non-text element is not provided;

    b. Title frames with text are not provided for identification and navigation;

    c. Equivalent text is not provided when using scripts;

    d. Forms with the same information and functionality as for sighted

persons are not provided;

e. Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f. Text cannot be resized without assistive technology up to 200 percent without loss of content or functionality;

g. If the content enforces a time limit, the user is not able to extend, adjust, or disable it;

h. Web pages do not have titles that describe the topic or purpose;

i. The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j. One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k. The default human language of each web page cannot be programmatically determined;

l. When a component receives focus, it may initiate a change in context;

m. Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n. Labels or instructions are not provided when content requires user input;

o. In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p. Inaccessible Portable Document Format (PDFs); and,

q. The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including screen-reading software.

**COMPLAINT**
7

39. Binding California law recognizes website accessibility claims under the ADA and the UCRA.

40. In September 2019, California Court of Appeal in *Thurston v. Midvale Corp.*, 39 Cal. App. 5th 634 (2019), held that businesses are accountable for the inaccessibility of websites and for content of third parties with whom they contract to provide services to customers (map programs, reservations, sales etc.), that the trial court did not violate defendant's due process rights by imposing WCAG 2.0 AA compliance standards for injunctive relief, that the injunction was not overbroad or uncertain, and that plaintiff had standing to obtain injunction under the Unruh Act because she visited the website and encountered barriers to access. In June 2020, California Court of Appeal in *Martinez v. San Diego County Credit Union*, 50 Cal.App.5th 1048 (2020), also held that there is a sufficient nexus between a website and place of public accommodation if the website permits the customer to research and prepare before going to the physical facility, including to make informed decisions about its products and services.

41. An abundance of other courts throughout California and the country have also held that commercial websites and mobile applications must be accessible under the ADA and UCRA.

42. Each of Defendant's violations of the ADA constitutes a violation of the UCRA. Cal. Civ. Code § 51(f).

## FACTUAL BACKGROUND

43. Defendant offers its commercial Website to the public.

44. The Website offers features which should allow all consumers to access the goods and services offered in connection with its brick-and-mortar locations. The Website itself is also a service offered to the public.

45. The Website provides consumers with access to an array of goods, services, and information related to Defendant's brick-and-mortar locations which include, but are not limited to, the following: product descriptions, online ordering, contact options, location information, career opportunities, pricing details, account sign-up, email sign-up, and/or many

COMPLAINT
8

other benefits.

46. Based on information and belief, it is Defendant's policy and practice to deny Plaintiff, along with other blind or visually-impaired users, access to Defendant's Website, and to therefore specifically deny the goods and services that are offered and integrated with Defendant's brick-and-mortar locations and otherwise.

47. Due to Defendant's failure and refusal to remove access barriers to its Website, Plaintiff and visually-impaired persons have been and are still being denied equal access to Defendant's brick-and-mortar locations and the numerous goods, services, privileges, and benefits offered to the public through Defendant's Website, including the Website itself.

48. Plaintiff cannot use a computer without the assistance of SRS.

49. Plaintiff is a proficient user of SRS and uses it to access the Internet.

50. Plaintiff's SRS is the current version and is up to date.

51. Plaintiff has visited Defendant's Website on separate occasions using SRS.

52. While attempting to navigate the Website, Plaintiff encountered multiple accessibility barriers for blind or visually-impaired people that include, but are not limited to:

    a. The home page has graphics, links, and buttons that are not labeled or are incorrectly labeled, or lack alternative text ("Alt-text"). Alt-text is invisible code embedded beneath a graphical image on a website. Web accessibility requires that Alt-text be coded with each picture so that screen-reading software can speak the Alt-text where a sighted user sees pictures. Alt-text does not change the visual presentation, but instead a text box shows when the cursor moves over the picture. The lack of Alt-text on these graphics prevents screen-readers from accurately vocalizing a description of the graphics;

    b. Plaintiff encountered multiple unlabeled or mislabeled buttons and links. Without descriptive alternate text, Plaintiffs, and other screen-reader users, have no way to discern the purpose or function of the button or link;

**COMPLAINT**
9

      c. Plaintiff encountered multiple pages containing insufficient navigational headings requiring Plaintiff to expend substantial additional time to access information; and,

      d. Plaintiff was unable to place an order because of an inaccessible order system.

53. Due to the unlabeled buttons, lack of Alt-text, the structure of the headings and Website, cursor traps, and other barriers, Plaintiff was unable to fully and independently access the Website when visiting for the dual purpose of confirming compliance with the UCRA and ADA and to browse the products before placing an order for pick-up at the Downey location.

54. Plaintiff intended to place an order of groceries for pick up at Defendant's brick-and-mortar location in Downey, CA. Due to the inaccessibility of Defendant's ordering system, Plaintiff was prevented from visiting Defendant's brick-and-mortar location and picking up groceries. Plaintiff was therefore deprived of equal enjoyment of Defendant's brick-and-mortar location.

55. Since as early as October 21, 2024, October 22, 2024, and until the current date, during Plaintiff's separate visits to the Website, Plaintiff encountered multiple access barriers which denied Plaintiff full and equal access to the facilities, goods, and services offered to the public and made available to the public on the Website.

56. Due to the widespread access barriers Plaintiff encountered on the Website, Plaintiff has been deterred, on a regular basis, from accessing the Website. Similarly, the access barriers Plaintiff encountered on the Website have deterred Plaintiff from visiting Defendant's brick-and-mortar locations.

57. If the Website were equally accessible to all, Plaintiff could independently navigate the Website as sighted individuals do.

58. Having attempted to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

59. There are readily available, well established guidelines, available to Defendant

on the Internet, for designing, constructing, and maintaining websites to be accessible to blind and visually-impaired persons. Other large business entities have used these guidelines, or have otherwise been able, to make their websites accessible, including but not limited to: adding Alt-text to graphics and ensuring that all functions can be performed using a keyboard. In addition, incorporating these basic changes and adding certain elements to Defendant's Website would not fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant. Because maintaining and providing a website where all functions can be performed using a keyboard would provide full, independent, and equal access to all consumers to the Website, Plaintiff alleges that Defendant has engaged in acts of discrimination including, but not limited to the following policies or practices:

  a. Construction and maintenance of a website that is inaccessible to visually-impaired individuals, including Plaintiff;

  b. Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

  c. Failure to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

60. Although Defendant may currently have centralized policies for maintenance and operation of the Website, Defendant lacks a plan and policy reasonably calculated to make its website fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers, including Plaintiff.

61. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use Defendant's Website in violation of their rights.

62. Defendants continue to operate the Website while providing insufficient full and equal access by legally blind persons, including Plaintiff and other persons with visual impairments, and will continue to do so and thereby deny full and equal access to Plaintiff and other legally blind persons until this Court orders appropriate injunctive relief compelling

**COMPLAINT**
11

compliance with the ADA.

## FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990

### (42 U.S.C. section 12101, et seq.)

63. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. ALDI INC. is a public accommodation with the definition of Title III of the ADA, 42 USC § 12181.

64. The Website provided by the Defendant is a service, privilege or advantage and extension of ALDI INC.'s physical presence and terrestrial services.

65. When a business provides services such as a website, it must provide an accessible website.

66. Here, an accessible website has not been provided. A failure to provide an accessible website is unlawful discrimination against persons with disabilities.

67. ALDI INC.'s failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

68. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 et seq. [WWW.ALDI.US]

### (By Plaintiff Against All Defendants)

69. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

70. California Civil Code § 51 et seq. guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendant is systematically violating the UCRA, Civil Code § 51 et seq.

71. Defendant's brick-and-mortar locations are "business establishments" within the meaning of the Civil Code § 51 *et seq.* Defendant generates revenue through its Website. Defendant's Website is a service provided by Defendant that is inaccessible to patrons who are blind or visually-impaired like Plaintiff. This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public, including the service of the Website itself. Defendant is violating the UCRA, Civil Code § 51 *et seq.*, by denying visually-impaired customers the goods and services provided on its Website. These violations are ongoing.

72. Defendants' actions constitute intentional discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq.*, because of the following: Defendant has constructed a website that is inaccessible to Plaintiff; Defendant maintains the Website in this inaccessible format; and, Defendant has failed to take action to correct and remove these barriers that cause discrimination to persons with Plaintiff's disability.

73. Defendant is also violating the UCRA, Civil Code § 51 *et seq.* because the conduct alleged herein violates various provisions of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* as amended by the ADA Amendments Act of 2008 (P.L. 110-325), as set forth above. Section 51(f) of the Civil Code provides that a violation of the right of any individual under the ADA also constitutes a violation of the UCRA.

74. The actions of Defendant violate UCRA, Civil Code § 51 *et seq.*, and Plaintiff is therefore entitled to injunctive relief remedying the discrimination. Plaintiff expressly limits the cost of injunctive relief sought to $50,000 or less.

75. Plaintiff is entitled to statutory minimum damages pursuant to Civil Code § 52 for each and every offense; however, Plaintiff hereby expressly limits the amount of money such that the total amount Plaintiff seeks to for each and every offense shall not exceed $24,999.00.

76. Plaintiff is also entitled to reasonable attorneys' fees and costs.

////

# PRAYER

**WHEREFORE, Plaintiff prays for judgment against Defendant, as follows:**

1. A Declaratory Judgment that at the commencement of this action Defendant owns, maintains, and/or operates its Website in a manner which discriminates against the blind, fails to provide access to blind or visually-impaired individuals, and that Defendant took no action that was reasonably calculated to ensure that its Website is fully accessible to, and independently usable by blind and visually-impaired individuals in violation of the ADA and the UCRA;

2. Preliminary and permanent injunctive relief as permitted by the ADA (42 U.S.C § 12181); however, Plaintiff hereby expressly limits the injunctive relief to require that Defendant expend no more than $50,000 thereon;

3. Plaintiff seeks no relief related to any architectural barriers to access in this Complaint and expressly limits all claims to injunctive relief to modifications of Defendant's policies and procedures related to the Website;

4. An award of statutory minimum statutory damages of not less than $4,000 per violation pursuant to § 52(a) of the California Civil Code; **Note**: Plaintiff is not invoking California Civil Code § 55 and is not seeking injunctive relief under the Disabled Persons Act or the Unruh Civil Rights Act at all.

5. As an additional violation, minimum statutory damages of not less than $4,000.00 for deterrence; and

6. For reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205 and Civil Code Section 52.

////
////
////
////
////
////

COMPLAINT
14

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.

Dated: November 8, 2024          **MANNING LAW, APC**

By: _____
Joseph R. Manning Jr., Esq.
Attorney for Plaintiff